**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

**FLOWSERVE CORPORATION,**

                              **Plaintiff,**         **AMENDED COMPLAINT**

    against                                      **05 Civ. 8075 (WHP)**

**BMCE, INC.,**

                              **Defendant.**

------------------------------------------------------------------------x

Plaintiff, FLOWSERVE CORPORATION ("FLOWSERVE"), by its Attorneys, SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD, for their Complaint against Defendant, BMCE, INC. ("BMCE"):

**PRELIMINARY STATEMENT**

FLOWSERVE seeks this Honorable Court's assistance in enforcing its rights to specific performance pursuant to the 1988 asset purchase agreement through which FLOWSERVE's predecessor BW/IP International, Inc. ("BW/IP") acquired certain assets of United Centrifugal Pumps (hereafter "UCP"), the corporate predecessor of defendant BMCE. FLOWSERVE seeks, *inter alia*, a declaration of its right to specific performance by BMCE to assume tenders of all asbestos-related suits now pending, and future claims, nationwide against UCP and FLOWSERVE for diseases allegedly caused by products manufactured prior to FLOWSERVE's acquisition of UCP.

Each and every one of the UCP pumps at issue in the asbestos litigation was designed, manufactured, and placed into the stream of commerce by UCP. Profits from each and every one of these pumps was earned by UCP.

## PARTIES

1. Plaintiff FLOWSERVE is a corporation organized under the laws of the State of New York with its principal office located at 5215 N. O'Connor Blvd., Suite 2300 in Irving, Texas.

2. Upon information and belief, Defendant BMCE, INC. is a corporation organized under the laws of the State of Wyoming.

## VENUE AND CHOICE OF LAW

3. Section 12.8 of the 1988 asset purchase agreement (the "1988 Agreement") out of which FLOWSERVE's instant claims derive provides that it shall be governed by and construed and enforced in accordance with the laws of the State of California. A Copy of the 1988 Agreement attached hereto as Exhibit 1.

4. New York State is a proper venue for this lawsuit. FLOWSERVE is a New York corporation, and BMCE, Inc. has defended various asbestos lawsuits in New York and, upon information and belief, maintains New York counsel.

5. Section 12.10 of the 1988 Agreement contains a provision to resolve certain disputes through arbitration.

## CORPORATE HISTORY

6. On or about October 28, 1988, BW/IP purchased the assets of UCP for valuable consideration (the "1988 Sale") pursuant to a written contract executed on or about July

31, 1988.  As a result of the 1988 Sale, BW/IP acquired certain of UCP's industrial product assets.

7. This dispute arises from breach and anticipatory breach of the seller's contractual indemnification obligations under the 1988 Agreement to the buyer for a series of asbestos-related personal injury claims alleging asbestos exposure from UCP products manufactured prior to 1988 brought in various jurisdictions throughout the United States ("Underlying Asbestos Claims").

8. On or about the time of purchase, the seller, United Centrifugal Pumps ("UCP"), changed its name to BMCE, Inc. ("BMCE" as noted, *supra*).  Upon information and belief, BMCE succeeded to and now possesses all of the contractual obligations owed by UCP under the 1988 Agreement.

9. On July 22, 1997, the buyer BW/IP merged with Durco International, Inc. to form Flowserve Corporation.  FLOWSERVE has stepped into the shoes of BW/IP and now possesses all of the rights and obligations of the original buyer under the 1988 Agreement.

**FLOWSERVE OBTAINED THE RIGHTS TO INSURANCE COVERAGE OR, IN THE ALTERNATIVE, INDEMNIFICATION FROM BMCE FOR PRE-1988 PRODUCT LIABILITIES UNDER THE 1988 AGREEMENT**

10. Pursuant to §1.1(r) of the 1988 Agreement, the buyer (hereafter "FLOWSERVE") acquired various assets of the seller (hereafter "BMCE"), including *inter alia*:

> "[*A*]*ll rights and benefits under past or present insurance policies* and coverage, including all rights to assert claims, to receive payments, to cause benefits to be provided and to take other rightful actions thereunder or in respect thereof (other than any insurance policy identitified on Schedule 2.23 as being retained by [BMCE]), it being understood and agreed that (i) any transfer of the foregoing policies and coverages shall be subject to a reservation of rights in favor of [BMCE] to the extent that any of the Excluded Liabilities may be entitled to the benefit of any such policies or coverages …" (emphasis added)

3

11. Pursuant to §1.8(b) of the 1988 Agreement, FLOWSERVE agreed to assume certain UCP liabilities, including product liability claims made after the Closing Date of the 1988 Agreement ("Closing Date") for pumps sold by BMCE before the Closing Date ("UCP's Pre-Sale Liabilities"), but only if:

> "…(ii) *all of [BMCE's] transferable rights and benefits under its insurance policies, if any, are transferred to [FLOWSERVE] on the Closing Date* without any interruption or diminution of the coverage afforded thereby." (emphasis added)

12. BMCE failed to transfer UCP's insurance policies to FLOWSERVE before, on or after the Closing Date. Accordingly, FLOWSERVE did not assume and BMCE retained all liability for UCP's Pre-Sale Liabilities pursuant to §1.8(b) of the 1988 Agreement.

**BMCE'S BREACH OF THE 1988 AGREEMENT**

13. Upon information and belief, over the past several years BMCE has been directly sued as successor to UCP's Pre-Sale Liabilities in various Underlying Asbestos Claims. In accordance with BMCE's obligations under the 1988 Agreement, BMCE has entered appearances and defended against such claims as "BMCE, Inc., successor in interest to United Centrifugal Pumps."

14. In January 2005, FLOWSERVE informed BMCE's counsel of a pending Underlying Asbestos Claim in the State of California in which UCP products were allegedly at issue (the "California Suit"). BMCE's counsel thereafter agreed to assume the defense of the California Suit on behalf of BMCE as the legal successor under the 1988 Agreement to UCP's Pre-Sale Liabilities.

15. On or about March 11, 2005, pursuant to the 1988 Agreement, FLOWSERVE's counsel sent a letter of notice to BMCE's counsel of BMCE's obligation to

defend seven other Underlying Asbestos Claims wrongly filed against FLOWSERVE as the purported successor to UCP's Pre-Sale Liabilities ("FLOWSERVE's tender"). FLOWSERVE's tender letter dated March 11, 2005, attached hereto as Exhibit 2.

16. On or about March 31, 2005, BMCE's counsel sent an e-mail correspondence to FLOWSERVE's counsel denying BMCE's obligation to indemnify FLOWSERVE for costs incurred defending the California Suit. BMCE's letter to FLOWSERVE dated March 31, 2005, attached hereto as Exhibit 3.

17. On April 11, 2005, BMCE's counsel inexplicably refused to accept and defend the seven Underlying Asbestos Cases previously tendered to BMCE by FLOWSERVE. BMCE's rejection of FLOWSERVE's tender letter dated April 10, 2005, attached hereto as Exhibit 4.

### BMCE'S FAILURE TO TRANSFER AVAILABLE INSURANCE POLICIES TO FLOWSERVE

18. Upon information and belief, at the time of the 1988 Sale, BMCE maintained various comprehensive general liability insurance policies (the "UCP policies") which BMCE was obligated to transfer to FLOWSERVE pursuant to the terms of §1(r) of the 1988 Agreement. UCP insurance chart, attached hereto as Exhibit 5.

19. BMCE failed to transfer the UCP policies and all rights and benefits thereunder to FLOWSERVE before, on or after the Closing Date.

20. On June 9, 2005, FLOWSERVE's counsel requested information in connection with the UCP insurance policies from counsel for Unigard, one of UCP's insurance carriers. Flowserve's letter to Dennis Zaragosa dated June 9, 2005, attached hereto as Exhibit 6.

21. On July 1, 2005, Unigard's insurance counsel responded to FLOWSERVE's request:

5

> "*BMCE has maintained that it is the successor corporation to the California corporation formerly known as 'United Centrifugal Pump,' a*nd Unigard and other insurers have relied upon those representations. We understand that BMCE is the policyholder."
>
> "We are not at liberty to disclose the information that you are seeking … In addition, BMCE has privacy rights that the insurers, including my client, must honor." (emphasis added)

Dennis Zaragosa letter to Flowserve dated July 1, 2005, attached hereto as Exhibit 7.

# COUNT I
# CLAIM FOR RELIEF
## (Breach and Anticipatory Breach of Contract)

22. FLOWSERVE repeats each and every allegation in Paragraphs 1 through 21 as if fully set forth herein.

23. Pursuant to §1.1(r) of the 1988 Agreement, the seller contractually agreed to provide the buyer with all rights and benefits under past or present insurance policies maintained by UCP.

24. Pursuant to §1.8(b) of the 1988 Agreement, the parties further agreed that the buyer would not assume and that the seller would retain UCP's Pre-Sale Liabilities in the event that the seller failed to transfer all the rights and benefits of the seller's UCP insurance policies to the buyer on the Closing Date.

25. BMCE assumed and succeeded to the contractual obligations the seller owed the buyer under the 1988 Agreement, including all indemnification obligations and/or obligations to transfer available UCP insurance policies to the seller.

26. FLOWSERVE acquired and succeeded to all the contractual rights the seller owed the buyer under the 1988 Agreement, including all indemnification rights and/or rights to insurance policies.

27. BMCE has failed to transfer the UCP insurance policies to FLOWSERVE pursuant to its obligations under the 1988 Agreement, a condition precedent for FLOWSERVE to have assumed liabilities for the Underlying Asbestos Claims.

28. BMCE has and continues to reject FLOWSERVE's tenders of the Underlying Asbestos Claims involving UCP liabilities, claims for which BMCE is contractually obligated to assume liability and to hold FLOWSERVE harmless.

29. BMCE's actions constitute a breach, as well as an anticipatory breach, of the 1988 Agreement.

30. Accordingly, FLOWSERVE is entitled to an order for specific performance that defendant accept and assume the defense of future tenders of Underlying Asbestos Claims from FLOWSERVE pursuant to the 1988 Agreement.

## PRAYER FOR RELIEF

WHEREFORE, FLOWSERVE prays for judgment as follows:

a) declaring that defendant BMCE accept future tenders of Underlying Asbestos Claims from FLOWSERVE pursuant to the 1988 Agreement, and;

b) for all costs and expenses (including attorneys' fees) incurred by FLOWSERVE in this litigation and in the defense of the underlying asbestos cases, and all other and further relief the Court deems just and equitable.

Dated: December 28, 2006
New York, New York

By: _____

Erich Gleber, Esq.
SEGAL McCAMBRIDGE SINGER
& MAHONEY, LTD.
Attorneys for Plaintiff
Flowserve Corporation
830 Third Avenue, Suite 400
New York, New York 10022
(212) 651-7500

# VERIFICATION

STATE OF NEW YORK      )

                           ) ss.:

COUNTY OF NEW YORK   )

ERICH GLEBER, being duly sworn, deposes and says that he is one of the attorneys for the plaintiff in the above-entitled action; that he has read the foregoing Amended Complaint, and that the same is true to his own knowledge, except as to those matters stated therein to be alleged on information and belief, and as to those matters, he believes them to be true.

This verification is made by deponent instead of the said plaintiff because the plaintiff resides outside the County of New York where deponent maintains his offices.

                                                                                                                       _____

                                                                                                                Erich Gleber

Sworn to before me
_____ day of _____, ____.

_____
Notary Public